**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| HECTOR LUNA, JULIAN GARCIA, ) | |
| SANTOS MALDONADO and ) | |
| BARTOLO NUÑEZ, individually and on ) | |
| behalf of other similarly situated, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v.                   ) | CASE NO. 06-CV-2000-JEC |
| ) | |
| DEL MONTE FRESH PRODUCE ) | |
| (SOUTHEAST), INC., and DEL ) | |
| MONTE FRESH PRODUCE N.A., INC., ) | |
| ) | |
|     Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

## I.    INTRODUCTION

Defendants properly noticed the depositions of the putative class representatives for dates in November, 2006. While the depositions were noticed to take place in Atlanta, Georgia, where this action is pending, Defendants' counsel offered to conduct the depositions at any other mutually agreeable location in the United States. Plaintiffs' counsel have steadfastly rejected this offer. Instead, Plaintiffs have moved this Court for a protective order which would block the depositions of three of the five putative class

representatives (Hector Luna, Julian Garcia, and Bartolo Nuñez) from being taken at any location other than Mexico.   In support of their motion, Plaintiffs have advanced three reasons why Defendants' counsel should be required to travel to Mexico to take the depositions of Luna, Garcia, and Nuñez:  (1) the expense which Luna, Garcia, and Nuñez would incur in traveling to the United States from Mexico; (2) the potential prejudice to their ability to obtain future visas to enter the country, either for work or for the trial of this case, if they obtain visas to enter the country now for depositions; and (3) the availability of a less expensive means of taking the depositions or alternate means of discovery. For the reasons set forth below, Plaintiffs proffered reasons for refusing to personally appear for deposition in this venue, or even in the United States, in a lawsuit they voluntarily filed on behalf of potentially hundreds of allegedly similarly situated persons are without merit and their Motion for Protective Order should be denied.

## II.    LEGAL ANALYSIS

### A.    Standard of Review.

"It is well-established that the party wishing to obtain a  protective order [under Rule 26(c) of the Federal Rules of Civil Procedure] has the burden of demonstrating that 'good cause' exists for the order." <u>Williams v.</u>

<u>Taser International, Inc.</u>, 2006 WL 1835437, at *1 (N.D. Ga. June 30, 2006).

<u>See</u> <u>also</u> <u>Stamps v. Encore Receivable Management, Inc.</u>, 232 F.R.D. 419,

423 (N.D. Ga. 2005)("The burden of showing good cause for a protective

order rests on the party requesting relief.").   "[T]he party seeking a

protective order must make 'a particular and specific demonstration of fact

as distinguished from stereotyped and conclusory statements' supporting the

need for a protective order."  <u>Williams</u>, 2006 WL 1835437, at *1 (quoting

<u>Auto-Owners, Ins. Co. v. Southeast Floating Docks, Inc.</u>, 231 F.R.D. 426,

430 (quoting <u>United States v. Garrett</u>, 571 F.2d 1323, 1326 n. 3 (5th Cir.

1978)).  Plaintiffs have argued that "Defendants cannot show any need for

the desired depositions to take place in the United States as opposed to

Mexico City or another Mexican location."  (Plaintiff's Brief at 20). While

this is factually incorrect, Defendants do not bear this burden. Rather,

Plaintiffs are required to demonstrate that good cause exists for entry of a

protective order.   This they have failed to do.   Plaintiffs' supporting

evidence does not rise above the level of stereotype and conclusion and,

therefore, their Motion for Protective Order should be denied.

**B.     Defendants Properly Noticed the Depositions of the Class Representatives to be Taken in Atlanta, Georgia.**

Under the Federal Rules of Civil Procedure, the location of a deposition is first left to the party noticing the deposition.  Fed. R. Civ. P. 30(b)(1).  "Normally, a plaintiff will be required to make himself or herself available for examination in the district in which suit was brought because the plaintiff selected the forum."  McGinley v. Barratta, 2006 WL 2346301, at *1 (E.D. Pa. Aug. 11, 2006).  See also Networks USA XVIII, Inc. v. Denny's Inc., 2006 WL 1522991, at *1 (E.D. Mo. 2006)("[A]s Plaintiff chose the forum, it is proper for the for its corporate representative to make himself or herself available for deposition in that forum . . . .");  Stubbs v. McDonald's Corp., 2005 WL 375662, at *1 (D. Kan.  Jan. 26, 2005)("Since plaintiff has selected the forum, he or she will not be heard to complain about having to appear there for a deposition);  Orrison v. Balcor Co., 132 F.R.D. 202, 203 (N.D. Ill. 1990)(a plaintiff should appear for deposition in the forum in which he chose to file suit).  This well-established rule has been recognized by the United States District Court for the Northern District of Georgia (Atlanta Division).  See Grey v. Continental Marketing Associates, Inc., 315 F. Supp. 826, 832 n. 16 (N.D. Ga. 1970)("[P]laintiffs, however, who selected the forum . . . may therefore be called upon to present

themselves at that place for the taking of their depositions, despite any inconvenience this may cause to them.").

The general rule applies even when the plaintiff resides in a foreign country.  Indeed, numerous courts have required that plaintiffs residing in foreign countries present themselves for deposition in the United States.  For example, in Clem v. Allied Van Lines Int'l Corp., 102 F.R.D. 938, 940 (S.D.N.Y. 1984), the plaintiff was an American citizen stationed abroad whose belongings were lost by a moving company when he was transferred to Dubai.  Id. at 939.  The plaintiff filed suit in the United States seeking damages for the loss of his belongings.  During the course of the proceedings, the defendant moving company properly noticed the deposition of the plaintiff in New York (the forum in which the plaintiff filed suit).  In an effort to avoid having to return to New York for his deposition, the plaintiff moved for a protective order pursuant to Rule 26 as well as an order requiring that his deposition be taken by telephone pursuant to Rule 30(b)(7).  Id.  The court denied the motions, following the well-established rule that a non-resident plaintiff who choose a particular forum is required to appear for deposition in that forum, absent compelling circumstances.  Id.; see also Dubai Islamic Bank v. Citibank, N.A., 202 WL 1159699 (S.D.N.Y.

May 31, 2002)(applying the general rule, the court required plaintiff to produce for deposition in New York, where it filed the lawsuit, certain officers, directors, and managing agents residing in Dubai); Prozina Shipping Co., Ltd. v. Thirty-four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998)("Having chosen to bring action in Unites States fora, Prozina [a Cyprian company with its headquarters in Hong Kong] cannot now argue that it would be too burdensome for it to appear for discovery here."); Grotrian, Helfferich, Schulz, TH. Steinwig Nachf v. Steinway & Sons, 54 F.R.D. 280, 281 (S.D.N.Y. 1971)(applying the general rule, the court ordered plaintiff to produce for deposition in New York (where it filed the lawsuit) an officer of the corporation who resided in Germany).  In short, "[t]here should be little reluctance to require a foreign plaintiff to attend deposition in the United States."  Handbook of Federal Civil Discovery and Disclosure, § 15.31.  This should be the case in this instance and Plaintiffs and putative class representatives Luna, Garcia and Nuñez should be required to appear for their depositions in Atlanta.

### C.   Plaintiffs Have Failed to Demonstrate that Good Cause Exists to Deviate from the General Rule Regarding the Proper Location for the Deposition of a Plaintiff.

Plaintiffs have advanced three reasons why Luna, Garcia, and Nuñez should not be required to travel from Mexico to the United States for their depositions:  (1) the expense which they would incur in traveling to the United States from Mexico; (2) the potential prejudice to their ability to obtain future visas to enter the country, either for work or for the trial of this case, if they obtain visas to enter the country now for depositions; and (3) the availability of a less expensive means of taking the depositions or alternate means of discovery.  Plaintiffs have failed to demonstrate that good cause exists for entry of a protective order on these grounds.  On the contrary, Plaintiffs' supporting evidence does not rise above the level of stereotype and conclusion.

### 1.   Plaintiffs Have Failed to Show that Garcia and Nuñez are Financially Unable to Travel to this Country for Deposition Due to the Expense Associated with the Visa Application Process.

Plaintiffs have provided the Court with no evidence in support of their claim that Garcia and Nuñez are unable bear the financial expense associated with the visa application process and the related expense associated with travel to the United States for deposition.  Consequently, Garcia and Nuñez

have failed to demonstrate good cause for the requested  protective order based upon their financial circumstances.  In any event, Plaintiffs counsel have previously represented to the Court that "[t]hey are prepared to advance costs necessary to vigorously litigate this action."  (Amended Complaint at ¶¶ 61, 68).  This advancement could reasonably include costs of travel to the U.S.  Additionally, Plaintiffs offered to pay the costs associated with defense counsel's travel to Mexico for the depositions, they then can easily cover these costs for their own counsel.[1]

### 2.      Plaintiffs Are Estopped from Asserting Financial Hardship as Part of Their Good Cause Showing for Luna.

Plaintiffs have submitted Luna's affidavit of Luna in support of their position that he is financially unable to procure the necessary visa to enter this country for his deposition.  Luna's affidavit describes conditions of poverty and the remoteness of his location relative to large population centers in Mexico.  Because discovery is just underway and Luna has notably not been deposed, Defendants are not in a position to controvert this affidavit.  Nevertheless, Plaintiffs' counsel, as noted above, have represented that they are prepared to advance the costs necessary to vigorously litigate

---

[1] Notably, this offer did not include payment of the attorneys fees incurred during an extended travel period.

this action.  (See Amended Complaint at ¶¶ 61, 68).   This is one of those costs.   According to Plaintiffs' own calculations, the travel expense for Mr. Luna to attend his deposition in Atlanta would only be "approximately $1,000 to $1,200." (Plaintiff's Brief at 17).   Presumably, the travel expense would be even less for a deposition taken in a city closer to the border of Mexico.  In any event, Mr. Luna's travel cost is not an expense that he will likely bear personally in light of his counsel's expressed willingness to advance costs.   Indeed, if Plaintiffs cannot advance sufficient costs for a $1000 plane ticket, it begs the question as to how Luna, Garcia or Nuñez can properly act as class representatives.

> **3.** **Plaintiffs Have Failed to Show that They Cannot Obtain the Visas Necessary for Entrance into the United States and Should not be Permitted to Use the Visa Application Process as a Barrier Against Legitimate Discovery.**

Plaintiffs maintain that Luna, Garcia, and Nuñez should not be required to enter this country for their depositions because such entry might prejudice their ability to enter the country in the future *for work or for trial*. Plaintiffs have submitted no evidence in support of their motion for a protective order which shows that any of these three Mexican nationals has even begun the process to obtain a visa.   Rather, Plaintiffs rely on the hearsay, conclusory, and speculative statements set forth in the Affidavit of

James M. Knoepp and the Declaration of Rachel Micah-Jones.   These affidavits/declarations provide nothing more than an overview of the alleged difficulty, expense, futility and potential prejudice connected with the visa application process for indigent Mexican nationals – they certainly are not based on proper foundations or personal knowledge related to these three particular putative class representatives.   The statements set forth in these declarations are nothing more than a thinly veiled critique of the U.S. immigration system by two lawyers whose lifework  has been representing the interests of migrant workers.   Nothing in those affidavits remotely suggests that anyone has made any attempt to obtain visas for Luna, Garcia, and Ñunez.   Further, the opinions expressed are just that – opinions – and are not based upon any actual attempt by Luna, Garcia, and Nuñez to obtain visas to enter this country for their depositions.   Rather, they are based on anecdotal experiences in other cases and amount to nothing more than speculation or conclusion as applied in this case.   As such, they should be disregarded in their entirety.   Federal Rules of Evidence 602, 802.

Luna, Garcia, and Nuñez have each entered this country on at least one prior occasion in order to take advantage of employment opportunities. This federal lawsuit which they have filed arises out of their employment in

this country.   Through their counsel, Luna, Garcia, and Ñunez, have suggested that they plan to return to this country in the future to take advantage of new employment opportunities as they have done in the past (probably on numerous occasions).   (Plaintiff's Brief at 10).   In fact, Plaintiffs' counsel states:   "Given that Plaintiffs have applied for guestworker visas in the past and likely will seek guestworker visas for future employment in the U.S. in the near term, application of the bar could prevent Plaintiffs from seeking future guestworker status on which they may depend for their families livelihood."   (Id. at 5).   While Luna, Garcia, and Nuñez apparently are planning to leave Mexico "in the near term" for "future employment in the U.S.," they are unwilling to step one foot across the border to appear for depositions in a lawsuit which they filed in this country and in which they seek to represent an entire class arising out of their employment while in this country.   The argument is dripping with irony.

Plaintiffs have also failed to offer any evidence that these three individuals have made any effort to obtain the necessary visas to enter this country for deposition purposes.   Rather, Plaintiffs have erected a paper fence between the Mexico and the United States, which they claim is made

of bureaucratic red tape, through the Affidavit of Mr. Knoepp and the Declaration of Ms. Micah-Jones.   Regardless of whether such a barrier exists, Defendants did not erect  that fence and should not be prejudiced by its alleged existence.

Nor have Defendants taken advantage of the immigration system for profit as suggested by Plaintiffs.   Contrary to the assertions of Plaintiffs, Defendants did not recruit these Mexican nationals or have any contact with them whatsoever in Mexico.    Plaintiffs' claim that certain nonparties (farm labor contractors) acted as their agents in recruiting Mexico nationals residing in Mexico is just that – a claim which has not been proven and which is denied by Defendants.  Defendants did not go to Mexico directly or through agents to hire Mexican Nationals.   In any event, Plaintiffs' employee status with respect to Defendants is one of the key facts in dispute in this case.   Indeed, this is the only issue at this stage of the bifurcated proceedings.  Plaintiffs' argument wrongly implies that the issue has already been resolved in their favor.

Furthermore, Plaintiffs should not be permitted to prevail on this motion for protective order for sound policy reasons.   If Plaintiffs' arguments carry the day, Mexican nationals of modest means will never

have to come to this country for deposition in lawsuits which they have filed here.   Indeed, foreign plaintiffs of modest means residing in countries without a visa waiver program would never be subject to deposition in the country where they chose to file suit; instead defendants will be forced to bear the significant costs not only of travel but of the related attorneys fees. This despite the fact that all the while they may be entering and leaving this country on H-2A or H2B visas.   Clearly such a result should not be countenanced by this Court.

  **4.**  **Rule 30(b)(7) Does Not Authorize the Taking of Depositions of Plaintiffs Located in Foreign Countries Telephonically or via Video Conference.**

  Plaintiffs have moved the court alternatively to order that these depositions be taken telephonically or via video conference pursuant to Rule 30(b)(7) of the Federal Rules of Civil Procedure.  In support of their motion, Plaintiffs primarily rely upon <u>Rahau Inc. v. Colortech, Inc.</u>, 145 F.R.D. 444 (W.D. of Mich. 1993) and <u>Jahr v. IU Int'l Corp.</u>, 109 F.R.D. 429 (M.D. N.C. 1993).  Plaintiff's reliance upon these cases is misplaced for two important reasons.

  First, "<u>Jahr</u> dealt with a nonparty witness, not a plaintiff who was seeking monetary and other benefits from the litigation."   <u>Williams v.</u>

<u>Sprint/United Management Co.</u>, 2006 WL 1867471, at *3, n. 3 (D. Kan. June 30, 2006).   In <u>United States v. Rock Springs Vista Development</u>, 185 F.R.D. 603 (D. Nev. 1999), a case in which out-of-state plaintiffs sought an order that their depositions be taken telephonically, the court correctly observed:

> The issue of taking the deposition of a witness is different from the issue of taking the deposition of a plaintiff. A witness is not responsible for and has not made the election to be involved in the litigation. Therefore, there are limits to the imposition that the judicial system should impose on such a person. The plaintiff, on the other hand, has not only taken the volitional step of initiating the lawsuit or claim, he or she stands to gain a substantial monetary sum and/or other beneficial relief as a result of suing a defendant. A plaintiff, therefore, cannot invoke the mere fact inconvenience or expense as a legitimate reason to refuse to appear and submit himself or herself to questioning by the defendant regarding the basis for the claim.

<u>Id</u>. at 604 (denying the plaintiffs' Rule 37(b)(7) motion to require that their depositions be taken telephonically because they no longer resided in the forum). <u>Rehau</u> is similarly distinguishable in that the telephonic depositions involved nonparty witnesses who were employees and former employees of the plaintiff corporation.  145 F.R.D. at  446.

Second, <u>Jahr</u> strongly and persuasively questions the applicability of Rule 30(b)(7) to telephonic depositions taken outside of the United States:

The very terms of Rule 30(b)(7) makes it questionable whether telephonic depositions are authorized outside of the United States or its territories or insular possessions.  The last sentence of the subsection provides that for purposes of the Rule, a telephonic deposition is taken in the place where the deponent answers the questions, and cites Rule 28(a), but not Rule 28(b). The omission of Rule 28(b), which governs depositions in foreign countries, was likely intentional in recognition of the difficulties, in general, encountered in conducting foreign depositions.  See 8 Wright and Miller, *Federal Practice and Procedure*, § 2083 (1970).  In light of the sensitive nature of foreign depositions, the drafters may have felt that the time was not yet ripe for United States courts to telephonic depositions in foreign countries.

109 F.R.D. at 432, n. 3.   Under the Federal Rules of Civil Procedure, a telephonic deposition is taken in the place where the deponent answers the questions – in this case it would be Mexico.  Rule 30(b)(7) by its own terms restricts such depositions to "the district and place" where the questions are answered and does not contemplate or authorize telephonic depositions in places outside of the United States, same as Mexico.

### 5.    Plaintiffs' Suggested Deposition Alternatives are Inadequate Substitutes for  Face-to-Face Depositions.

(i)    Deposition by Telephone or Video Conference.

Telephonic or video conference depositions are inadequate substitutes for face-to-face depositions of the putative class representatives for a number of important reasons.   First, Luna, Garcia, and Nuñez do not speak

English.   This fact will necessitate the use of translators during the deposition.   The process of taking testimony through the necessary interpolations of a translator is difficult and tedious enough in a face-to-face deposition.  The difficulties are multiplied when the deposition is conducted remotely via telephone or video conference.   <u>See</u> <u>Dubai Islamic Bank v. Citibank, N.A.</u>, 2002 WL 1159699, at *15 (S.D.N.Y. 2002)(rejecting request for telephonic deposition, in part, because of the language barriers and the need for interpreters).

Second, "[t]elephone depositions are not recommended for obtaining controversial testimony." <u>United States v. Rock Springs Vista Development</u>, 185 F.R.D. 603, 604 (D. Nev. 1999).   This is because "[y]ou cannot observe the impact of your questions or the witness' nonverbal responses."   <u>Id</u>. Consequently, counsel is unable to use the witnesses demeanor as a guide for probing further into an area of inquiry or for evaluating his credibility as a witness at trial.  <u>Id</u>.  <u>See also</u> <u>National Life Ins. Co. v. Hartford Accident and Indemnity Co.</u>, 615 F.2d 595, 599-600, n. 5 (3d Cir. 1980).   Further, counsel taking the deposition is "[u]nable to ascertain if anyone is listening in or 'coaching' the witness." <u>Rock Springs</u>, 185 F.R.D. at 604 (citations omitted).   While the severity of these problems is somewhat diminished by

the use of video conferencing, they are not eliminated entirely because of the limited scope of the video (i.e., who and what is actually shown on the screen) and the oftentimes poor quality of the transmission.  As the Eleventh Circuit Court of Appeals has observed in another context:  "The simple truth is that confrontation through a video monitor is not the same as face-to-face physical confrontation."   U.S. v. Yates, 438 F.3d 1307, 1315 (11th Cir. 2006)(addressing the constitutional right of confrontation in criminal case).

Third, Defendants' ability to effectively utilize exhibits during a telephonic or video conference deposition is severely diminished.  During a telephonic or video conference deposition, Defendants' counsel will have difficulty eliciting a spontaneous reaction by showing the plaintiff a document which he may not have reviewed in preparation for his deposition because the deponent would presumably have access to the deposition exhibits well before he is questioned about them.   See Daly v. Delta Airlines, Inc., 1991 WL 33392, at *1 (S.D.N.Y. March 7, 2001). Furthermore, Defendants' counsels' ability to spontaneously add a document to the examination will be constrained since the deposition exhibits presumably must be forwarded to the deponent in advance.   Id. Additionally, the problem of document use during the depositions would be

compounded in this case by the sheer volume of documents.  See Silva Run Worldwide Ltd. v. Gaming Lottery Corp., 2003 WL 23009989, at *2 (S.D.N.Y. Dec. 23, 2003)(denying defendant's motion to have his deposition taken telephonically or via video conference because of the number of documents involved).  To date, Defendants alone have produced over 30,000 pages of documents and the number of documents utilized in these depositions will potentially be significant.

(ii)   Deposition Upon Written Questions.

Plaintiffs have suggested as an alternative to face-to-face depositions that Defendants take the depositions of Luna, Garcia, and Nuñez upon written questions pursuant to Rule 31 of the Federal Rules of Civil Procedure.  The apparent suggestion that this is the functional equivalent of or adequate substitute for a face-to-face Rule 30 oral deposition is ludicrous. As Professor Moore has observed, "[U]sually written or epistolary interrogation is not as an effective method as oral or confrontory interrogation for obtaining discovery, especially when the deponent is an adverse party or a hostile witness."  4A J. Moore, J. Lucas & D. Epstein, Moore's Federal Practice ¶ 31.02 at 31-4.1 to -5 (2d ed. 1990)."  See also Daly, 1991 WL 33392 at * 1 (rejecting suggestion that a deposition on

written questions is functional equivalent of face-to-face Rule 30 deposition). On the contrary, a deposition upon oral questions is the functional equivalent of interrogatories, with the distinction that they, unlike interrogatories, can be propounded upon nonparties. See New Hampshire Motor Tranport Ass'n v. Rowe, 324 F.Supp.2d 231, 236 n. 5 (D. Me. 2004). "The benefit of spontaneity inherent in oral depositions makes them preferable to written interrogatories [or depositions upon written questions]." Southern Film Extruders, Inc. v. Coca-Cola Co., 117 F.R.D. 559, 562 n. 1 (M.D. N. C. 1987). Further, "written questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes." Mill-Run Tours, Inc. v Khashoggi, 124 F.R.D. 547 (S.D.N.Y. 1989).

(iii)   Oral Deposition Ten Days Before Trial.

Plaintiffs also suggest that Defendants should forego an oral deposition at this time in favor of a deposition ten days prior to trial. (Plaintiff's Brief at 22). This proposal is equally absurd. Defendants cannot be expected to defend a class action without the advantage of taking the deposition of the putative class representatives at a relatively early stage in the proceedings. In any event, the proposal is completely unworkable in

light of the fact that discovery in this case has been bifurcated.  The first stage of discovery is limited to whether either Defendant "employed" the putative class representatives.  Obviously, Defendants will need to take the depositions of the class representatives during the first stage of discovery to determine if the second phase is even needed.  Obviously, this issue will need to be decided long  before trial or even certification issues can be considered.

      **D.**    **Plaintiffs' Calculations Concerning the Cost to Defendants of Taking the Depositions in Mexico is Missing a Key Component – the Cost of Attorney Travel Time**.

Plaintiffs argue that "Defendants plainly have the financial ability to travel substantial distances . . . ."  (Plaintiffs' Brief at 19).  Defendants financial resources relative to those of Plaintiffs are not the issue on this motion.  In any event, it is not "cheaper to depose the three plaintiffs in Mexico," as Plaintiffs suggest.  (See Plaintiff's Brief at 16).  Plaintiffs cost calculations do not include the attorneys fees which will be incurred by Defendants if their attorneys are required to travel from Atlanta, Georgia to Mexico for these depositions.  Moreover, Plaintiffs have not offered to pay for the attorney fees incurred by such travel time.

## III.   CONCLUSION[2]

Defendants clearly are entitled to take the depositions of the putative class representatives in the forum in which they chose to proceed with this lawsuit.  Plaintiffs cannot hide behind their foreign residency in an effort to evade legitimate discovery or to force Defendants to proceed with discovery devices significantly less effective than face-to-face oral depositions. Plaintiffs have not established good cause for entry of a protective order for the reasons set forth above or shown that they are entitled to have their depositions taken telephonically or via video conference.  Consequently, Plaintiffs motions should be denied.

DATED this 10th day of November 2006.

*/s/ Jacqueline E. Kalk*
Jacqueline E. Kalk
Georgia Bar No.  406238
Bradley E. Strawn, Esq.
Georgia Bar No. 4419
Latesa K. Bailey
Florida Bar No. 527688
LITTLER MENDELSON, P.C.
3348 Peachtree Road N.E., Suite 1100
Atlanta, Georgia 30326-1008
Phone: (404) 233-0330
Email:  jkalk@littler.com
COUNSEL FOR DEFENDANTS

---

[2] Pursuant to Local Rule 7.1D, the undersigned certifies that this pleading complies with the font and point selections permitted by Local Rule 5.1B.  This Memorandum was prepared on a computer using the Times New Roman 14 point typeface.

## CERTIFICATE OF SERVICE

This is to certify that I have this 10th day of November 2006, served opposing counsel via the electronic filing system:

| | |
|---|---|
| Mary C. Bauer, Esq. | Gregory Scott Schell, Esq. |
| Kelley M. Bruner, Esq. | Florida Legal Services, Inc. |
| Andrew H. Turner, Esq. | 58 Lucerne Avenue |
| Immigrant Justice Project | Lake Worth, Florida  33460 |
| Southern Poverty Law Center | |
| 400 Washington Avenue | |
| Montgomery, Alabama  36104 | |

/s/ Jacqueline E. Kalk
Jacqueline E. Kalk

Firmwide:81654743.1 035892.2013