# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

## ATLANTA DIVISION

_____

HECTOR LUNA,                                          )
JULIAN GARCIA,                                        )
FRANSCISO JAVIER LORENZO               )
SANTOS G. MALDONADO,                       )
PATRICIA WOODARD,                             )
and BARTOLO NUÑEZ,                            )
individually and on behalf of all others         )
similarly situated,                                      )
                                                                   )
and                                                             )
                                                                   )
ADA LINDA GARCIA-TENORIO,              )
ADOLFO ROBLERO-MORALES,              )
ANGEL MANCILLA,                                 )
ARISTEO CAMACHO-GRIMALDO,        )
BALTAZAR DIAZ-OROZCO,                    )
BERNANRDO CEDILLO-DUQUE,           )
CARLOS MARTINEZ-MEDINA,               )
CESAR ARTURO GARCIA-SANCHEZ,   )
CIRILO ALVARADO-MAR,                      )
ELADIO CORTEZ-SANCHEZ,                   )
EMILIO GALARZA-BANDA,                     )
ENRIQUE LOPEZ-LOREDO,                     )
FELIZARDO GARCIA-MARTINEZ,          )
FORTUNATO ORTEGA-SANTES,            )
FRANCISCO BELTRAN-ROJAS,              )
HUMBERTO CEPADA-ROSAS,                )
HUMBERTO HERNANDEZ-GALVAN,    )
IGNACIO IBARRA-RIVERA,                    )
J. ISABEL MARTINEZ-ABUNDIZ,           )
JORGE AGUILAR-ESTEBAN,                  )

JOSE ANTONIO FABIAN-FLORES,    )
JOSE HERNANDEZ-HERNANDEZ,    )
JOSE JUAN MARTINEZ-GALLEGOS,    )
JOSE RICARDO ZUNIGA-MAR,    )
JOSE VICTOR MARTINEZ-MENDEZ,    )
JUAN ALBINO JUAREZ-ESTRADA,    )
LAZARO NAVA-OSORIO,    )
LEOPOLDO BARRIOS-ORTEGA,    )
LORENA SIERRA-GONZALEZ,    )
MIGUEL MARTINEZ-MARTINEZ,    )
NARCISA MORENO-DIAZ,    )
NARCISO MEDINA-REYES,    )
PABLO MEDINA-REYES,    )
PEDRO BARRIOS-ORTEGA,    )
RAUL ESCOBAR,    )
REYES RAMOS-VASQUEZ,    )
ROBERTO DEL ANGEL-CARRERA,    )
ROBERTO MANCILLA-HERNANDEZ,    )
SIXTO MANCILLA-RODRIGUEZ,    )
TEODORO DUQUE-ZUNIGA,    )
TOMASA HERNANDEZ-CORONADO,    )
URIEL PATINO-CORONA,    )
ADOLFO GOMEZ,    )
C.J. MASON,    )
GEORGE ALLEN,    )
GEORGE WORTHEN,    )
HOPE WILLIAMS,    )
JAMIL WRIGHT,    )
KATHY WILLIAMS,    )
ROSA ARIAS,    )
SANDREKA MADISON, and    )
VEOTA KHAMLUSA    )
    )
       Plaintiffs,    )
    )

|                                            |     |                          |
|--------------------------------------------|-----|--------------------------|
|                                            |  )  | **Case No. 1:06-cv-02000-** |
| v.                                         |  )  | **JEC**                  |
|                                            |  )  |                          |
| DEL MONTE FRESH PRODUCE                     |  )  |                          |
| (SOUTHEAST), INC., and                      |  )  |                          |
| DEL MONTE FRESH PRODUCE, N.A.,              |  )  |                          |
| INC.                                       |  )  |                          |
|                                            |  )  |                          |
|             Defendants.                     |  )  |                          |
| _____        |  )  |                          |

## <u>THIRD AMENDED COMPLAINT</u>

## NATURE OF THE ACTION

1.      This is a civil action brought by fifty-eight migrant and seasonal

agricultural workers employed by Defendant Del Monte Fresh Produce (Southeast),

Inc. and Defendant Del Monte Fresh Produce N.A., Inc., (collectively "Del Monte"

or "Defendants") at their Georgia farms in and around Wheeler and Telfair

Counties to plant, harvest, transport and pack melons, greens and onions during the

2003, 2004, 2005 and 2006 harvest seasons.  The Plaintiffs file this action to secure

and vindicate their rights under the Migrant and Seasonal Agricultural Worker

Protection Act, 29 U.S.C. § 1801-1871 (1999), (hereinafter "AWPA"), the Fair

Labor Standards Act, 29 U.S.C. § 201 – 219 (1998), (hereinafter "FLSA"), and

under state and federal contract law.  Representative Plaintiffs Hector Luna, Julian

Garcia, Francisco Javier Lorenzo, Santos G. Maldonado, Patricia Woodard and Bartolo Nuñez assert their Fair Labor Standards Act claims on behalf of themselves and all others similarly situated.

2.     The Plaintiffs complain of the Defendants' unlawful employment practices during the 2003, 2004, 2005 and 2006 seasons.

3.     Acting through their agents, the Defendants recruited the Plaintiffs to work on their Georgia produce farms.  The Defendant, through their recruiting agents, made binding promises regarding wages, hours and working conditions.  In reliance upon and in consideration of these binding promises, many Plaintiffs left their homes, families and children and spent considerable money and effort to travel to Georgia to work for the Defendants.

4.     The Defendants employed two distinct classes of agricultural workers.  The Defendants employed agricultural "guestworkers" recruited from Mexico pursuant to the temporary agricultural work visa program commonly known as the "H-2A program."  8 U.S.C. §1188(H)(ii)(a).  These guestworkers (hereinafter "H-2A workers") had written contracts of employment that included specific representations regarding wages, hours and working conditions.  The terms of these employment contracts were primarily dictated by federal regulations.  The H-2A worker Plaintiffs assert claims under the FLSA and for breach of contract.

5.     The Defendants also employed migrant and seasonal workers who were not H-2A guestworkers (hereinafter "migrant and seasonal agricultural workers").  These non-H-2A, migrant and seasonal agricultural workers were recruited from within the United States.   As a matter of law, the Defendants were not permitted to offer less favorable terms of employment to similarly situated domestic workers.  20 C.F.R. § 655.102.  Thus, the same terms and conditions of employment offered contractually to the H-2A workers were incorporated as the minimum terms of the AWPA "working arrangement" of the migrant and seasonal agricultural workers.  The migrant and seasonal agricultural worker Plaintiffs assert claims under the AWPA and under the FLSA.

6.     Throughout their employment, the Defendants breached the terms of the Plaintiffs' employment agreements.  The Defendants consistently failed to pay the promised wage rate for all hours worked.  The Defendants also failed to reimburse the Plaintiffs for costs they incurred for the benefit of the Defendants to the extent that these costs brought Plaintiffs' first week of wages below the required hourly rate.

7.     The H-2A Worker Plaintiffs identified specifically in ¶¶ 15-59 below assert Count I claims for breach of contract.  The Migrant and Seasonal Agricultural Worker Plaintiffs identified specifically in ¶¶ 60-72 below assert

Count II claims under the AWPA.  Representative  Plaintiffs Hector Luna, Julian

Garcia, Francisco Javier Lorenzo, Santos G. Maldonado, Patricia Woodard, and

Bartolo Nuňez assert their Count III claims under the FLSA on behalf of

themselves and all others similarly situated.

      8.     Plaintiffs seek to recover their unpaid wages, actual, statutory,

liquidated, incidental, consequential, and compensatory damages and pre- and post-

judgment interest.  Plaintiffs also seek reasonable attorneys' fees pursuant to 29

U.S.C. § 216(b).

<h3 style="text-align:center">JURISDICTION</h3>

      9.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this

action arising under the laws of the United States.

      10.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1337, this

action arising under Acts of Congress regulating commerce.

      11.     Jurisdiction is conferred upon this Court by 29 U.S.C. § 1854(a), this

action arising under the AWPA.

      12.     Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b), this

action arising under the FLSA.

      13.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this case

presenting state law claims that implicate significant federal issues.  In the

alternative, the Court is requested to exercise supplemental jurisdiction over Plaintiffs' state law claims.  The state claims involve the same case and controversy as the federal claims.  Supplemental jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

## VENUE

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 29 U.S.C. § 1854(a).

## PARTIES

### The H-2A Worker Plaintiffs

15.    Representative Plaintiff Hector Luna was an H-2A guestworker employed by Defendants from approximately 2003 to 2004.  Mr. Luna joined the Fair Labor Standards Act claims in this case as a named Plaintiff on April 20, 2006.  [Rec. Doc. 27.]

16.    Representative Plaintiff Julian Garcia was an H-2A guestworker employed by Defendants in approximately 2003.  Mr. Garcia joined the Fair Labor Standards Act claims in this case as a named Plaintiff on April 20, 2006.  [Rec. Doc. 33.]

17.     Representative Plaintiff Francisco Javier Lorenzo Perez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Lorenzo joined the Fair Labor Standards Act claims in this case as a named Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

18.     Ms. Ada Linda Garcia-Tenorio was an H-2A guestworker employed by Defendants in approximately 2006.  Ms. Garcia joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on August 13, 2007.  [Rec. Doc. 196-2.]

19.     Mr. Adolfo Roblero-Morales was an H-2A guestworker employed by Defendants in approximately 2004.   Mr. Roblero-Morales joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on March 23, 2007.  [Rec. Doc. 123.]

20.     Mr. Angel Mancilla was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Mancilla joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

21.     Mr. Aristeo Camacho-Grimaldo was an H-2A guestworker employed by Defendants in approximately 2006.  Mr.Camacho-Grimaldo joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

22.     Mr. Baltazar Diaz-Orozco was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Diaz-Orozco joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006. [Rec. Doc. 42.]

23.     Mr. Bernardo Cedillo-Duque was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Cedillo-Duque joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

24.     Mr. Carlos Martinez-Medina was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Martinez-Medina joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006. [Rec. Doc. 42.]

25.      Mr. Cesar Arturo Garcia-Sanchez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Garcia-Sanchez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

26.     Mr. Cirilo Alvarado-Mar was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Alvarado-Mar joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

27.     Mr. Eladio Cortez-Sanchez was an H-2A guestworker employed by Defendants from approximately 2003 to 2004.  Mr. Cortez-Sanchez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on June 22, 2006. [Rec. Doc. 27.]

28.     Mr. Emilio Galarza-Banda was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Galarza-Banda joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

29.     Mr. Enrique Lopez-Loredo was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Lopez-Loredo joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

30.     Mr. Felizardo Garcia-Martinez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Garcia-Martinez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

31.     Mr. Fortunato Ortega-Santes was an H-2A guestworker employed by Defendants in approximately 2006.   Mr. Ortega-Santes joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

32.     Mr. Francisco Beltran-Rojas was an H-2A guestworker employed by Defendants from approximately 2003 to 2004.  Mr. Beltran-Rojas joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on June 22, 2006. [Rec. Doc. 27.]

33.     Mr. Humberto Cepada-Rosas was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Cepada-Rosas joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on August 13, 2007.  [Rec. Doc. 196-2.]

34.     Mr. Humberto Hernandez-Galvan was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Hernandez-Galvan joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 12, 2007. [Rec. Doc. 152.]

35.     Mr. Ignacio Ibarra-Rivera was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Ibarra-Rivera joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

36.    Mr. J. Isabel Martinez-Abundiz was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Martinez-Abundiz joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

37.    Mr. Jorge Aguilar-Esteban was an H-2A guestworker employed by Defendants in approximately 2004.  Mr. Aguilar-Esteban joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on March 23, 2007.  [Rec. Doc. 123.]

38.    Mr. Jose Antonio Fabian-Flores was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Fabian-Flores joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

39.    Mr. Jose Hernandez-Hernandez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Hernandez-Hernandez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 11, 2007.  [Rec. Doc. 207.]

40.     Mr. Jose Juan Martinez-Gallegos was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Martinez-Gallegos joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

41.     Mr. Jose Ricardo Zuniga-Marz was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Zuniga-Mar joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

42.     Mr. Jose Victor Martinez-Mendez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Martinez-Mendez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

43.     Mr. Juan Albino Juarez-Estrada was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Juarez-Estrada joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

44.     Mr. Lazaro Nava-Osorio was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Nava-Osorio joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.

[Rec. Doc. 42.]

     45.    Mr. Leopoldo Barrios-Ortega was an H-2A guestworker employed by

Defendants in approximately 2006.  Mr. Barrios-Ortega joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc.

151.]

     46.    Ms. Lorena Sierra-Gonzalez was an H-2A guestworker employed by

Defendants in approximately 2006.  Ms. Sierra-Gonzalez joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.

[Rec. Doc. 42.]

     47.    Mr. Miguel Martinez-Martinez was an H-2A guestworker employed

by Defendants in approximately 2006.  Mr. Martinez-Martinez joined the Fair

Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.

[Rec. Doc. 151.]

     48.    Ms. Narcisa Moreno-Diaz was an H-2A guestworker employed by

Defendants in approximately 2006.  Ms. Moreno-Diaz joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc.

151.]

49.     Mr. Narciso Medina-Reyes was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Narciso Medina-Reyes joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on August 13, 2007. [Rec. Doc. 196-2.]

50.     Mr. Pablo Medina-Reyes was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Pablo Medina-Reyes joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on November 14, 2007. [Rec. Doc. 230.]

51.     Mr. Pedro Barrios-Ortega was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Barrios-Ortega joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

52.     Mr. Raul Escobar-Gonzalez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Escobar-Gonzalez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on May 12, 2008.  [Rec. Doc. 247.]

53.     Mr. Reyes Ramos-Vasquez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Ramos-Vasquez joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on July 12, 2007.  [Rec. Doc. 152.]

54.     Mr. Roberto Del Angel-Carrera was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Del Angel-Carrera joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

55.     Mr. Roberto Mancilla-Hernandez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Mancilla-Hernandez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007. [Rec. Doc. 151.]

56.     Mr. Sixto Mancilla-Rodriguez was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Mancilla-Rodriguez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on July 10, 2007.  [Rec. Doc. 151.]

57.     Mr. Teodoro Duque-Zuniga was an H-2A guestworker employed by Defendants in approximately 2006.  Mr. Duque-Zuniga joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006. [Rec. Doc. 42.]

58.    Ms. Tomasa Hernandez-Coronado was an H-2A guestworker employed by Defendants in approximately June 2006.  Ms. Hernandez-Coronado joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 21, 2006.  [Rec. Doc. 42.]

59.    Mr. Uriel Patino-Corona was an H-2A guestworker employed by Defendants in approximately 2004.  Mr. Patino-Corona joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on August 4, 2006.  [Rec. Doc. 33.]

## The Migrant and Seasonal Agricultural Worker Plaintiffs

60.    Representative Plaintiff Santos G. Maldonado was employed by Defendants in approximately 2004 as a migrant or seasonal agricultural worker.  Mr. Maldonado joined the Fair Labor Standards Act claims in this case as a named Plaintiff on April 20, 2006.  [Rec. Doc. 33.]

61.    Representative Plaintiff Patricia Woodard was employed by intermittently by Defendants from approximately 2003 to 2006 as a migrant or seasonal agricultural worker.  Ms. Woodard joined the Fair Labor Standards Act claims in this case as a named Plaintiff on October 24, 2006.  [Rec. Doc. 59.]

62.     Representative Plaintiff Bartolo Nuñez was employed intermittently by Defendants from approximately 2004through 2006 as a migrant or seasonal agricultural worker. Mr. Nuñez joined the Fair Labor Standards Act claims in this case as a named Plaintiff on April 20, 2006.  [Rec. Doc. 33.]

63.     Mr. Adolfo Gomez was employed by Defendants intermittently from approximately 2003 to 2006 as a migrant or seasonal agricultural worker.  Mr. Gomez joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 29, 2006.  [Rec. Doc. 53.]

64.     Mr. C.J. Mason was employed by Defendants intermittently from approximately 2004 to 2006 as a migrant or seasonal agricultural worker.  Mr. Mason joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on October 24, 2006.  [Rec. Doc. 59.]

65.     Mr. George Allen was employed by Defendants in approximately 2005 as a migrant or seasonal agricultural worker.  Mr. Allen joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on October 12, 2006.  [Rec. Doc. 58.]

66.     Mr. George Worthen was employed by Defendants in approximately 2004 as a migrant or seasonal agricultural worker.  Mr. Worthen joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on May 15, 2007.  [Rec. Doc. 142.]

67.     Ms. Hope Williams was employed by Defendants in approximately 2004 as a migrant or seasonal agricultural worker.  Ms. Williams joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on November 13, 2006. [Rec. Doc. 70.]

68.     Jamil Wright was employed by Defendants during times relevant to this action as a migrant or seasonal agricultural worker.  Mr. Wright joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on May 4, 2009. [Rec. Doc. 289.]

69.     Ms. Kathy Williams was employed by Defendants during times relevant to this action as a migrant or seasonal agricultural worker.  Ms. Williams joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on May 4, 2009. [Rec. Doc. 289.]

70.     Ms. Rosa Arias was employed intermittently by Defendants from approximately 2004 to 2006 as a migrant or seasonal agricultural worker. Ms. Arias joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on February 2, 2007.  [Rec. Doc. 114.]

71.     Ms. Sandreka Madison was employed by Defendants in approximately 2005 as a migrant or seasonal agricultural worker.  Ms. Madison joined the Fair Labor

Standards Act claims in this case as an opt-in Plaintiff on January 11, 2007.  [Rec. Doc. 109.]

72.    Ms. Veota Khamlusa was employed by Defendants in approximately 2006 as a migrant or seasonal agricultural worker.  Ms. Khamlusa joined the Fair Labor Standards Act claims in this case as an opt-in Plaintiff on September 29, 2006. [Rec. Doc. 53.]


## **Defendant**


73.    Defendant Del Monte Fresh Produce (Southeast), Inc. is a Delaware corporation that conducts substantial business in Georgia.

74.    Defendant Del Monte Fresh Produce N.A., Inc., is a Florida corporation that conducts substantial business in Georgia.[1]

75.    Upon information and belief, Defendant Del Monte Fresh Produce (Southeast), Inc., is responsible, under the direct supervision and control Del Monte

---

[1] Plaintiffs acknowledge and respect the authority of this Court's decision dismissing all claims against Del Monte Fresh Produce N.A., Inc. ("DMNA").  Rec. Doc. 231; Rec. Doc. 277.  Plaintiffs have appealed that decision to the U.S. Court of Appeals for the Eleventh Circuit [Rec. Doc. 285] and reassert their claims against DMNA here solely to avoid confusion regarding the statute of limitations, in the event their claims should be litigated on remand.

Fresh Produce N.A., Inc., for the planting, harvesting and packing of melons, greens and onions at the Defendants' farms in an around the Georgia counties of Wheeler and Telfair.

76.     Upon information and belief, Defendant Del Monte Fresh Produce (Southeast), Inc. was created for the purpose of achieving Del Monte Fresh Produce N.A., Inc.'s objectives with respect to the production, marketing, sale and distribution of its fresh produce, and are under the direct managerial and financial control of Defendant Del Monte Fresh Produce N.A., Inc. to the extent that it has no or insignificant financial assets of its own.

77.     Upon information and belief, Defendant Del Monte Fresh Produce (Southeast), Inc. was created in order to defeat justice, perpetuate fraud, evade contractual or tort responsibility, and/or confuse or avoid judgment creditors. Defendant Del Monte Fresh Produce (Southeast), Inc. is a mere instrumentality for the transaction of the affairs of Del Monte Fresh Produce N.A., Inc.

78.     Del Monte Fresh Produce N.A., Inc. is fully liable for its own acts and the acts of Defendant Del Monte Fresh Produce (Southeast), Inc.  Defendant Del Monte Fresh Produce (Southeast), Inc. is an alter ego of Del Monte Fresh Produce N.A., Inc. or, alternatively, is in an integrated enterprise or an agency relationship with it.  Further, Del Monte Fresh Produce N.A., Inc. is vicariously liable under the

doctrine of respondeat superior for the acts and omissions of Defendant Del Monte Fresh Produce (Southeast), Inc.

79.   At all times relevant to this action, Defendant Del Monte Fresh Produce (Southeast), Inc. and Defendant Del Monte Fresh Produce N.A., Inc. (collectively "Del Monte" or "Defendants") are agricultural employers within the meaning of 29 U.S.C. § 1802(2).

80.   At all times relevant to this action, the migrant and seasonal agricultural worker plaintiffs were either: (1) migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A), in that they were employed in agricultural employment of a seasonal or other temporary nature and were required to be absent overnight from their permanent places of residence; or (2) seasonal agricultural workers within the meaning of 29 U.S.C. § 1802(10)(A), in that they were employed in agricultural employment of a seasonal or other temporary nature and were not required to be absent overnight from their permanent place or residence.

81.   At all times relevant to this action, the migrant and seasonal agricultural worker plaintiffs were engaged in agricultural employment for the Defendants within the meaning of 29 U.S.C. § 1802(3).

82.     At all times relevant to this action, the Defendants employed the migrant and seasonal agricultural worker plaintiffs within the meaning of 29 U.S.C. § 1802(5).

83.     At all times relevant to this action, the Defendants were employers of the H-2A worker plaintiffs within the meaning of 20 C.F.R. § 655.100.

84.     At all times relevant to this action, the Defendants employed the Plaintiffs and all other members of the FLSA collective action class within the meaning of 29 U.S.C. § 203(g).

85.     At all times relevant to this action, the Defendants were employers of the Plaintiffs and all other members of the proposed collective action class within the meaning of 29 U.S.C. § 203(d).

86.     At all times relevant to this action, the Plaintiffs and all other members of the proposed collective action class were employees of the Defendants within the meaning of 29 U.S.C. § 203(e)(1).

87.     At all times relevant to this action, the Defendants employed the Plaintiffs and all other members of the proposed collective action class in the production, packing and harvesting of produce for sale in interstate commerce.

## STATEMENT OF FACTS

88.     During 2003, 2004, 2005 and 2006, the Defendants controlled and operated a produce farm located in and around the Georgia counties of Telfair and Wheeler.  The Defendants' farm produced onions, greens and melons for shipment in interstate commerce.

89.     During each season in question, the Defendants utilized the services of farm labor contractors charged with recruiting labor for the operation of the Defendants' Georgia produce farms.  During each season in question, the Defendants employed both temporary, foreign H-2A agricultural guest workers and migrant and seasonal agricultural workers recruited from within the United States. During each season in question, the Defendants relied upon these laborers, recruited by their farm labor contractors, to operate their Georgia produce farms.  During each season in question, the Defendants' farm labor contractors relied exclusively on the work provided by the Defendants to supply their recruits with employment.

90.     During each season in question, the Defendants' farm labor contractors requested, recruited and imported temporary, foreign H-2A agricultural guest workers through a U.S. Department of Labor "job order."

91.     An agricultural employer in the United States may import H-2A workers if the United States Department of Labor (hereinafter "U.S. D.O.L.")

certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed.  8 U.S.C. § 1101 (a)(15)(H)(ii)(a); 8 U.S.C. § 1188 (a)(1).  These provisions, along with the implementing United States Customs and Immigration Services ("U.S.C.I.S.") and U.S. D.O.L. regulations, are commonly referred to as the "H-2A program."

92.     Employers requesting H-2A workers must file a temporary labor certification application with the U.S. D.O.L. Regional Administrator responsible for the area where the job is located.  20 C.F.R. § 655.101 (a)(1) and (b)(1).  This application must include a job offer that complies with the requirements of 20 C.F.R. §§ 655.102 and 653.501.  20 C.F.R. § 655.101(b)(1).  The job offer, commonly referred to as a "clearance order" or "job order," is used to recruit both United States and H-2A workers.  The aforementioned regulations establish the minimum wages, benefits and working conditions required in an H-2A job order in order to avoid adversely affecting similarly employed United States workers.  20 C.F.R. § 655.0 (a)(2); 20 C.F.R. § 655.102.  These terms and conditions constitute an employment contract between the employer and employee, pursuant to 20 C.F.R. § 655.102(b)(14).

93.     As a condition of receiving temporary labor certification for the importation of H-2A workers, agricultural employers are required to pay the highest of the "adverse effect wage rate," the federal minimum wage, or the state minimum wage.  20 C.F.R. § 655.102 (b)(9)(i).  The adverse effect wage rate ("AEWR") is the average annual wage for agricultural workers during the preceding year, as established by the U.S. D.O.L. and published in the Federal Register.  20 C.F.R. § 655.107 (a).  During 2003, 2004, 2005 and 2006, the AEWR minimum hourly wage rates applicable to Georgia employers using H-2A guestworkers were $7.49, $7.88, $8.07 and $8.37 respectively.   68 Fed. Reg. 8929 (Feb. 26, 2003); 69 Fed. Reg. 10063 (Mar. 3, 2004); 70 Fed. Reg. 10152 (March 2, 2005); 71 Fed. Reg. 13633 (Mar. 16, 2006).  These wage rates were in effect throughout the Plaintiffs' employment by the Defendants.

94.     Agricultural employers who participate in the H-2A program are required to provide minimum pay and benefits as specified in the program's regulations.  One of these requirements is that "the employer shall comply with the applicable federal, state, and local employment-related laws and regulations," 20 C.F.R. § 655.103(b), which includes the Fair Labor Standards Act and the requirement that workers receive, free and clear of deductions and expenses incurred for the benefit of the employer, at least the applicable minimum and

overtime wages for all hours worked.  29 U.S.C. §§ 206(a); 207(a); 29 C.F.R. § 531.35.

95.     Agricultural employers who participate in the H-2A program are also required to maintain detailed, complete, and accurate records of worker pay and working time, in accordance with the requirements of the federal regulations that govern the H-2A program. 20 C.F.R. § 655.102(7)-(8).

96.     In addition, an employer using H-2A workers must offer U.S. workers no less than the same benefits, wages and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations upon U.S. workers not imposed upon H-2A workers. 20 C.F.R. § 655.102.

97.     Where an agricultural employer obtains some of its work force through the H-2A program, the terms of the "job order" establish the minimum terms and conditions of employment on that employer's farm for other agricultural workers. The terms and conditions set forth by the "job order" are incorporated as the minimum terms and conditions of the AWPA "working arrangement" governing the employment of similarly situated, non-H2A, migrant and seasonal agricultural workers recruited to work on the same farm.

98.     The H-2A worker Plaintiffs were employed by the Defendants during 2003, 2004, 2005 and/or 2006 under the terms of H-2A job orders.

99.     The migrant and seasonal agricultural worker Plaintiffs were recruited to the Defendants' farm and were employed as as migrant or seasonal agricultural workers by Defendants during the 2003, 2004, 2005, and/or 2006 seasons.  Their AWPA "working arrangement" incorporated the terms and conditions of employment set forth in the concurrent H-2A "job orders."

100.    Before the receipt of their first paycheck, many Plaintiffs and others similarly situated spent considerable sums of money to travel to and prepare for employment at the Defendants' Georgia produce farms.

101.    These expenditures were primarily for the benefit of the Defendants within the meanings of 20 C.F.R. §§ 531.32(c) and 778.217.

102.    The Defendants did not reimburse the Plaintiffs for these expenditures to the extent that these pre-employment costs brought their first week's wages below the applicable minimum wage.

103.    When compensating the Plaintiffs on a piece-rate basis, the Defendants failed to supplement the weekly earnings of the Plaintiffs when inadequate piece-rate earnings caused their average hourly wage during a pay period to fall below the applicable AEWR wage rate.

104.    When compensating the Plaintiffs on an hourly basis, the Defendants failed to pay the proper AEWR wage rate.

105.   Plaintiffs did not receive payment for all hours worked as required by federal law and their employment contract with the Defendants.

106.   Defendants did not maintain the detailed, accurate, and complete records required by federal law and their employment contract with Plaintiffs.  20 C.F.R. § 655.102(7).

107.   Defendants did not furnish Plaintiffs with the detailed, accurate, and complete pay statements required by federal law and the Plaintiffs' employment contracts. 20 C.F.R. § 655.102(8).

108.   Defendants utilized farm labor contracting services of individuals without taking reasonable steps to determine that these individuals possessed valid certificates of registration mandated by the AWPA. 29 U.S.C. § 1842.

## CLAIMS FOR RELIEF

### COUNT I  -  H-2A CONTRACT VIOLATIONS

109.   All claims set forth in Count I are brought by the H-2A Worker Plaintiffs, identified specifically in *supra* ¶¶  15-59.

110.   The H-2A Worker Plaintiffs incorporate by reference the allegations set forth above in the preceding paragraphs.

111.   This count sets forth a claim for damages against the Defendants for their breach of the "rate of pay" provision of the employment contract detailed in 20 C.F.R. § 655.102(b)(9)(ii)(A) and the H-2A record-keeping and pay statement provisions detailed in 20 C.F.R. § 655.102(b)(7)-(8).

112.   The Defendants offered and the H-2A worker Plaintiffs accepted employment on specific terms and conditions.

113.   The  H-2A Worker Plaintiffs are H-2A guestworkers recruited by the Defendants' farm labor contractors to leave their home villages in Mexico to work at the Defendants' Georgia produce farms.  After receiving a hiring commitment from the Defendants' farm labor contractors, the H-2A Worker Plaintiffs were required to process their H-2A work visas and travel to the Defendants' Georgia produce farms to begin work.

114.   Among the terms that the Defendants offered and Plaintiffs accepted was payment of at least the applicable AEWR wage rate for each hour worked up to forty hours in a week, and one-and-a-half times the applicable wage rate for hours worked above forty during weeks in which overtime-eligible work was performed. 29 U.S.C. § 207(a); 20 C.F.R. § 655.102(b)(9).

115.   The Defendants breached their employment contract with the Plaintiffs by failing to pay them the proper AEWR and overtime wage rates for all the work they performed.

116.   Among the terms that the Defendants offered and Plaintiffs accepted was maintenance of detailed, complete, and accurate pay records in compliance with the requirements of 20 C.F.R. § 655.102(b)(7).

117.   Defendants breached their employment contract with the Plaintiffs by failing to maintain the complete, detailed, and accurate pay records required by Plaintiffs' employment contract and by federal regulations.

118.   Among the terms that the Defendants offered and Plaintiffs accepted was Defendants' provision of detailed, complete, and accurate pay statements to Plaintiffs in compliance with the requirements of 20 C.F.R. § 655.102(b)(8).

119.   Defendants breached their employment contract with the Plaintiffs by failing to provide them with the complete, detailed, and accurate records pay statements required by Plaintiffs' employment contract and by federal regulations.

120.   The breach of the employment contract as set out in paragraphs 111 and 115 resulted in part from the Defendants' failure to reimburse the Plaintiffs for expenses they incurred which were primarily for the benefit of the Defendants to

the extent necessary to assure receipt of the applicable AEWR and overtime hourly wage rates in each Plaintiff's first week of employment.

121.   The breach of the employment contract as set out in paragraphs 111 and 115 resulted in part from the Defendants' failure to supplement the piece-rate earnings of the Plaintiffs and the other class members so as to raise their individual pay period wages to a rate equal to or exceeding the required AEWR and overtime wage rates.

122.   The breach of the employment contract as set out in paragraphs 111 and 115 resulted in part from the Defendants' failure to pay the proper AEWR and overtime wage rates for all work compensated on an hourly basis.

123.   The breaches of the employment contract as set out in paragraphs 111, 115, 117, and 119 resulted in part from the Defendants' maintenance of incomplete, false and inaccurate records of the hours worked by Plaintiffs.

124.   The breaches of the employment contract as set out in paragraphs 111, 115, 117 and 119 resulted in part from the Defendants' provision of incomplete, false and inaccurate records of hours worked to Plaintiffs.

125.   As a direct consequence of the Defendants' breaches of the employment contract, the Plaintiffs suffered economic injury.

126.   The Defendants are liable to Plaintiffs for the actual, incidental, and consequential damages which arose naturally and according to the usual course of things from the Defendants' breaches, as provided by O.C.G.A. § 13-6-2 and the federal common law of contracts, including unpaid wages, damages arising from the delay, and pre-judgment interest.

## COUNT II – MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT

127.   All claims set forth in Count II are brought by the Migrant and Seasonal Agricultural Worker Plaintiffs identified specifically in *supra* ¶¶ 60-72.

128.   The Migrant and Seasonal Agricultural Worker Plaintiffs incorporate by reference the allegations set forth above in the preceding paragraphs.

129.   This count sets forth claims for money damages, declaratory relief and injunctive relief against the Defendants for violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA").

130.   The certifications described in paragraphs 91 through 97 above constituted a working arrangement between the Defendants and the Plaintiffs within the meaning of the AWPA, 29 U.S.C. §§ 1822(c), 1832(c), and its attendant regulations, 29 C.F.R. § 500.72.

131. The Defendants violated the AWPA by failing to pay the Plaintiffs the proper AEWR and overtime wage rates for all the work they performed.

132. The violation of the AWPA as set out in paragraph 131 resulted in part from the Defendants' failure to supplement the Plaintiffs' piece-rate earnings so as to raise their individual pay period wages to a rate equal to or exceeding the required AEWR and overtime wage rates.

133. The violation of the AWPA as set out in paragraph 131 resulted in part from the Defendants' failure to pay the proper AEWR and overtime wage rates for all work compensated on an hourly basis.

134. The violation of the AWPA as set out in paragraph 131 resulted in part from the Defendants' maintenance of incomplete, false and inaccurate records of the hours Plaintiffs worked.

135. The violation of the AWPA as set out in paragraph 131 resulted in part from the Defendants' failure to reimburse the Plaintiffs for expenses they incurred which were primarily for the benefit of the Defendants.

136. By their actions and omissions described in paragraphs 131 through 135, the Defendants violated without justification their working arrangement with the Plaintiffs and the other members of the Count II class, thereby violating the

AWPA, 29 U.S.C. §§ 1822(c), 1832(c), and its attendant regulations, 29 C.F.R. § 500.72.

137.   By their actions and omissions described in paragraphs 131 through 135, the Defendants failed to pay the Plaintiffs their wages owed promptly when due, thereby violating the AWPA, 29 U.S.C. §§ 1822(a), 1832(a),  and its attendant regulations, 29 C.F.R. § 500.81.

138.   The Defendants failed to make, keep, and preserve accurate and complete records regarding the Plaintiffs' employment, in violation of the AWPA, 29 U.S.C. §§ 1821(d)(1), 1832(c)(1) and its attendant regulations, 29 C.F.R. § 500.80(a).

139.   The Defendants failed to provide the Plaintiffs complete and accurate itemized written statements for each pay period containing the required information, in violation of the AWPA, 29 U.S.C. §§ 1821(d)(2), 1831(c)(2), and its attendant regulations, 29 C.F.R. § 500.80(d).

140.   The Defendants failed to take reasonable steps to confirm that  farm labor contractors they utilized possessed valid certificates of registration, in violation of 29 U.S.C. § 1842.

141.   The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions

of the Defendants and were intentional within the meaning of the AWPA, 29 U.S.C.

§ 1854(c)(1).

142.   As a result of the Defendants' violations of the AWPA and its

attendant regulations as set forth in this count, the Plaintiffs have suffered damages.

## COUNT III: FAIR LABOR STANDARDS ACT
### (29 U.S.C. § 216(b) COLLECTIVE ACTION)

143.   The Plaintiffs incorporate by reference the allegations set forth in the

preceding paragraphs.

144.   This count sets forth a claim for declaratory relief and damages for the

Defendants' violations of the minimum wage provisions of the Fair Labor

Standards Act ("FLSA").

145.   This count is brought by Representative Plaintiffs

Hector Luna, Julian Garcia, Francisco Javier Lorenzo, Santos G. Maldonado,

Patricia Woodard, and Bartolo Nuñez on behalf of themselves and all non-

supervisory workers who performed planting, loading, harvesting, packing,

grading, field and shed sanitation and related agricultural activities on Defendants'

farming operations in and around Telfair and Wheeler countines from 2003 to 2006.

146.   Representative Plaintiffs Hector Luna, Julian Garcia, Francisco Javier

Lorenzo and Santos G. Maldonado also assert their claims on behalf of themselves

and a fully-contained subclass encompassing all such workers who incurred pre-employment expenses related to visa-processing, travel other than daily commuting, and any other fees required to be paid in order to work at Defendants' Georgia operations.

147.   Pursuant to 29 U.S.C. § 216(b), Plaintiffs have consented in writing to be party Plaintiffs in this FLSA action.  Their written consents are attached to this complaint.

148.   The Defendants violated the Plaintiffs' rights by failing to pay each worker at least an average of the applicable minimum wage for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

149.   The Defendants violated the Plaintiffs' rights by failing to pay each worker at least an average of one-and-a-half times the applicable wage for all hours worked above forty during overtime-eligible workweeks. 29 U.S.C. § 207(a).

150.   The violations of the FLSA in this count resulted, in part, from the Defendants' failure to reimburse expenses that were incurred by Plaintiffs primarily for the benefit of the Defendants, prior to the Plaintiffs' first week of work, as described above in paragraphs 100 through 102. When these expenses were deducted from Plaintiffs' first week's pay, they brought the Plaintiffs' earnings below the applicable FLSA minimum and overtime wages for that pay period.

151.   As a result of the Defendants' violations of the FLSA set forth in this count, each Plaintiff is entitled to recover the amount of his or her unpaid minimum and overtime wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. §216(b).

152.   The Defendants' violations set out in this count were willful within the meaning of the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

A.      With respect to the claims set forth in Count III, permitting this case to proceed as a 29 U.S.C. § 216(b) collective action;

B.      Declaring that the Defendants intentionally violated the Migrant and Seasonal Agricultural Worker Protection Act and its attendant regulations, as set forth in Count II;

C.      Declaring that the Defendants willfully violated the minimum wage provisions of the Fair Labor Standards Act as set forth in Count III;

D.      Granting judgment in favor of the Plaintiffs and against the Defendants under Count I and awarding each of the Plaintiffs and

other class members their respective actual, incidental and consequential damages;

E.      Granting judgment in favor of the Plaintiffs and against the Defendants under Count II and awarding each of the Plaintiffs actual or statutory damages for each violation of the AWPA, whichever is greater;

F.      Permanently enjoining the Defendants from further violations of the AWPA and its attendant regulations;

G.      Granting judgment in favor of the Plaintiffs and all others similarly situated and against the Defendants on their claims under the Fair Labor Standards Act as set forth in Count III and awarding each of these Plaintiffs and all other similarly situated individuals who opt-in to this action his unpaid minimum and overtime wages and an equal amount in liquidated damages;

H.      Awarding the Plaintiffs the costs of this action;

I.      Awarding Plaintiffs pre- and post-judgment interest as allowed by law;

J.      Awarding the Plaintiffs reasonable attorneys' fees with respect to their Fair Labor Standards Act claims; and

K.      Granting such further relief as is just and equitable.

Respectfully submitted this 7th day of May, 2009.


  /s/ Andrew H. Turner_____
Andrew H. Turner
*Pro Hac Vice*
Mary C. Bauer
Georgia Bar Number 142213
Kristi L. Graunke
Georgia Bar Number 305653
Immigrant Justice Project
Southern Poverty Law Center
233 Peachtree Street, Suite 2150
Atlanta, GA  30303
Telephone:  (404) 521-6700
Facsimile:   (404) 221-5835
Email: mary.bauer@splcenter.org
            kristi.graunke@splcenter.org
            andrew.turner@splcenter.org

Elizabeth J. Appley,
Georgia Bar No. 020987
235 Peachtree St. N.E., 2212 North Tower
Atlanta, GA 30303
Telephone:  (404) 523-3800
Facsimile:   (404) 523-0426
Email: eja@appleylaw.com


Attorneys for Plaintiffs